### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **1426 WISCONSIN L.L.C.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 14-2141 (JDB)** |
| **TRAVELERS INDEMNITY COMPANY OF AMERICA,** | |
| **Defendant.** | |

### MEMORANDUM OPINION

1426 Wisconsin, L.L.C., seeks to recover costs and lost income under its Travelers insurance policy. But 1426 Wisconsin's claim appears time-barred by a two-year contractual limitations period included in the policy. Because this Court agrees that Travelers engaged in no behavior that would estop it from enforcing that provision, nor waived its right to assert this defense, the Court will grant Travelers's motion for summary judgment.

### BACKGROUND

1426 Wisconsin's relationship with Travelers dates to 2008: the first policy Travelers issued was effective starting January 2009, and 1426 Wisconsin renewed it for 2010 and 2011. See Ex. 1 to Def.'s Mot. [ECF No. 6-2] at 1, 42. The parties agree that the 2011 policy consisted of several declarations and endorsements, as well as a Businessowners Property Coverage Special Form, a thirty-nine page document providing coverage for certain damages to 1426 Wisconsin's property. Ex. 7 to Pl.'s Opp'n [ECF No. 7-8] at 33; Pl.'s Mem. Opp'n [ECF No. 7-1] at 2. And the parties do not dispute that the Special Form contained a provision ("Legal Action Against Us")

1

requiring that any legal action against Travelers be brought "within two years after the date on which the direct physical loss or damage occurred."  Pl.'s Mem. Opp'n at 2 ("The undisputed facts are as follows . . . [t]he insurance policy contained a limitations period of two years for the bringing of legal action against Travelers.").  But according to 1426 Wisconsin, Travelers did not send it the Special Form until November 18, 2014—a fact that Travelers denies.  Compare Pl.'s Mem. Opp'n at 2 with Def.'s Reply [ECF No. 8] at 2.

On November 24, 2011, 1426 Wisconsin's property was damaged by the collapse of a neighboring building.  See Compl. [ECF No. 6-3] at 2.  Soon after, 1426 Wisconsin requested payment for damages under the insurance policy.  See Ex. 1 to Pl.'s Opp'n [ECF No. 7-2] at 2. Over the next five months, Travelers informed 1426 Wisconsin's sole member, Mossadaq Chughtai, and 1426 Wisconsin's public adjuster, Jeffrey Wolff, that it was investigating the claim—but reserving its rights to deny coverage under the policy.  See Ex. 3 to Def.'s Mot. [ECF No. 6-4] at 3.  Travelers informed 1426 Wisconsin in April 2012 that it had concluded its investigation of 1426 Wisconsin's claim and found some coverable damage, but would continue to adjust the claim.  See id. at 8–10.  Several weeks later, it sent 1426 Wisconsin a check for $15,461.03, representing a "Building Damages Payment."  See Ex. 2 to Pl.'s Opp'n [ECF No. 7- 3] at 1 (capitalized in original).  1426 Wisconsin ultimately rejected the offered amount, deeming it insufficient to cover its loss-of-rents claim under the policy.  See Compl. at 3.  Travelers closed the investigation on September 13, 2012, following—it maintained—several unsuccessful attempts to contact Chughtai for further documentation in support of 1426 Wisconsin's loss-of-rents claim. See Ex. 4 to Pl.'s Opp'n [ECF No. 7-5] at 1–2.

Over two years later, on November 19, 2014, 1426 Wisconsin filed suit in D.C. Superior Court, seeking "monetary damages . . . in repair and restoration costs," and "lost rental income."

Compl. at 3.   Travelers removed to this Court, where it has filed a motion to dismiss, or, alternatively, for summary judgment, arguing that the suit is barred by the two-year contractual limitations period.

## LEGAL STANDARD

Travelers has moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), or alternatively for summary judgment under Rule 56.  See Def.'s Mot. [ECF No. 6].  If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  Doing so requires that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Id.  No further notice is required where—as here—"the defendant expressly moves for summary judgment in the alternative to a motion to dismiss before discovery has been conducted, and relies on extra-pleading matters to which the plaintiff has an opportunity to respond."  Proctor v. District of Columbia, --- F. Supp. 3d ---, 2014 WL 6676232, at *4 (D.D.C. Nov. 25, 2014).  Because 1426 Wisconsin had ample notice and opportunity to respond, the Court will consider the extra-pleading materials submitted by the parties and thus evaluate the motion as one for summary judgment.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one "that might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Additionally, "all inferences must be viewed in a light most favorable to the non-moving party."  McCready v. Nicholson, 465 F.3d 1, 7 (D.C. Cir. 2006) (internal quotation marks omitted).

## ANALYSIS

Courts generally recognize the validity of contractual provisions limiting the period within which insurance policy holders may file suit.  Nkpado v. Standard Fire Ins. Co., 697 F. Supp. 2d 94, 98 (D.D.C. 2010).  And here 1426 Wisconsin concedes that its policy contains just such a two-year limitations period.  Pl.'s Mem. Opp'n at 2.  1426 Wisconsin also admits that it failed to file suit before the expiration of that limitations period.  Pl.'s Opp'n [ECF No. 7] at 1.  But 1426 Wisconsin believes its situation falls within some exceptions to this general rule.  Under District of Columbia law, "[b]oth waiver and estoppel can be invoked to preclude a party from asserting [a limitations period] as an affirmative defense."  Martinez v. Hartford Cas. Ins. Co., 429 F. Supp. 2d 52, 57 (D.D.C. 2006) (quoting P'ship Placements, Inc. v. Landmark Ins. Co., 722 A.2d 837, 841 n.14 (D.C. 1998)).  1426 Wisconsin argues that Travelers failed to send it the part of the insurance policy containing the contractual limitations clause—and therefore lulled 1426 Wisconsin into believing that no such limitations period existed.  In 1426 Wisconsin's view, then, Travelers is estopped from relying on that clause.  Pl.'s Mem. Opp'n at 4–5.  1426 Wisconsin further argues that because Travelers had "transmitt[ed] partial payment" for 1426 Wisconsin's claim, and "had engaged in settlement discussions," it waived the contractual limitations period in any event.  Id.  The Court is not persuaded by either argument.

At a fundamental level, 1426 Wisconsin's estoppel and waiver arguments cannot succeed because any of Travelers's allegedly delay-inducing behavior ended, at a minimum, a year before the contractual limitations period expired.  An insured cannot estop the insurer from asserting a policy's limitations period, nor will the insurer have waived the defense, when "the inducement by the insurance company not to file suit ended well before the limitations period expired."  Bailey v. Greenberg, 516 A.2d 934, 939 (D.C. 1986).  Thus, "[i]f ample time to file suit within the

statutory period exists after the circumstances inducing delay have ceased, there is no estoppel against pleading the bar of the statute." Prop. 10-F, Inc. v. Pack & Process, Inc., 265 A.2d 290, 291 (D.C. 1970).  1426 Wisconsin contends that the check Travelers sent for its building damages claim was a concession of Travelers's liability, causing 1426 Wisconsin to delay filing suit.  See Pl.'s Mem. Opp'n at 4–5.  But even if this Court were to construe Travelers's payment of the building damages claim as a delay-inducing action, 1426 Wisconsin still cannot prevail: Travelers denied 1426 Wisconsin's claim well before the limitations period expired.  See Bailey, 516 A.2d at 939.  Here, construing the facts in the light most favorable to 1426 Wisconsin, any inducement to delay ended, at the latest, in September 2012, when Travelers sent a letter to 1426 Wisconsin informing 1426 Wisconsin that Travelers was closing its investigation of the claim.  See Ex. 3 to Def.'s Mot. at 11–12.  That was more than a year before the two-year limitations period expired.  But 1426 Wisconsin instead waited two more years—until November 19, 2014—before filing suit.

Similar reasoning applies to the Special Form that 1426 Wisconsin says Travelers never sent it.  1426 Wisconsin received multiple policy documents—which, for the reasons explained below, afforded it notice that the Special Form was missing—in 2010 at the latest.  See Ex. 5 to Pl.'s Opp'n [ECF No. 7-6] at 3 (noting that the issue date of the policy was November 29, 2010).  Accordingly, even assuming that Travelers did not send 1426 Wisconsin the Special Form, this supposedly dilatory behavior ceased when 1426 Wisconsin received the other policy documents in 2010, and failed to note that the Special Form was missing.  Despite having had two years to file suit before the policy's November 2013 limitations period expired, 1426 Wisconsin delayed bringing this action until a full year later—in November 2014.  1426 Wisconsin's own inaction cannot now be used to estop Travelers from relying on the policy's limitations period.  The

contention that Travelers is estopped from asserting the policy's limitations period, and that it has waived this affirmative defense, therefore is unavailing.

## I.      Lulling

Even beyond that general principle, 1426 Wisconsin's argument that Travelers should be estopped from relying on the contractual limitations period still fails at a more nuanced level.  A defendant is estopped from asserting a contractual limitations period "if it appears [the defendant] has done anything that would tend to lull the plaintiff into inaction," Bailey, 516 A.2d at 937 (internal quotation marks omitted), such as "ma[king] misleading representations to the insured [where] the insured has relied on those representations to his or her detriment," id. at 939 n.5.  1426 Wisconsin argues that Travelers engaged in this behavior when it failed to provide 1426 Wisconsin with a copy of the Special Form—the part of the policy containing the contractual limitations period.  As a result, 1426 Wisconsin argues, it was misled into believing that there was no shortened limitations period.  Because, in 1426 Wisconsin's view, "there is a material dispute as to whether [it] had received . . . that portion of the policy known as the . . . Special Form," see Pl.'s Mem. Opp'n at 6, 1426 Wisconsin believes summary judgment is inappropriate.  The Court accepts that this is a disputed fact, but its materiality is less clear.

1426 Wisconsin's argument that Travelers's failure to send it the Special Form constituted lulling is particularly unpersuasive because 1426 Wisconsin had ample notice that the Special Form was missing.  As neither D.C. nor Maryland courts have addressed whether an insurer's alleged failure to send the insured part of the policy constitutes lulling, the Court must look to other jurisdictions for guidance.  See Cook v. Jane Lyons Adver., Inc., 1998 WL 164776, at *3 (D.D.C. Mar. 31, 1998).  But it is clear that a dispositive factor is "whether the document supplied to the insured may have suggested that all the restrictions of the policy were set forth in the

document." Willey v. United Mercantile Life Ins. Co., 990 P.2d 211, 216 (N.M. Ct. App. 1999). For instance, the New Mexico Supreme Court has held that a plaintiff was given adequate notice of a policy he claimed not to have received where he was given a "Certificate of Insurance." Young v. Seven Bar Flying Serv., Inc., 685 P.2d 953, 956 (N.M. 1984). That document "did not purport to contain an exclusive description" of the policy's terms, and contained language referring the insured "to the original Policy." Id. Conversely, when the documents that the insured has received do not clearly indicate whether they constitute the entirety of the policy, the insurer is estopped from relying on the contractual limitations period. See Godwin v. Cont'l Ins. Co., 436 F.2d 712, 713 (3d Cir. 1971) (concluding that a single footnote at the bottom of the page of a memorandum— "This is not a policy of insurance. It is a memorandum of the policy described herein at the date of issue hereof."—was insufficient to put the insured on notice that the policy had not been included (internal quotation marks omitted)); Elliano v. Assurance Co. of Am., 83 Cal. Rptr. 509, 512–13 (Cal. Ct. App. 1970) (finding that a document entitled "HOMEOWNERS POLICY CALIFORNIA MEMORANDUM OF INSURANCE," which purported to set forth all of the essential terms of the policy and which had the appearance of "a facsimile of the policy," was sufficiently misleading so as to estop the insurer from enforcing the policy's limitations period).

In this case, the policy documents that 1426 Wisconsin admits it did receive—taking its representations as true—make clear that they do not constitute the entirety of the contract. For instance, the declaration—the very first page of 1426 Wisconsin's copy of the policy—states: "The COMPLETE POLICY consists of this declarations [sic] and all other declarations, and the forms and endorsements for which symbol numbers are attached on a separate listing," thus indicating that the insured should look beyond that page to see the complete policy. Ex. 8 to Pl.'s Opp'n [ECF No. 7-9] at 3. This statement is especially probative because "[t]he declarations page is the

one page of the policy likely to be read by the insured, and contains the terms most likely to have been requested by the insured; it therefore is held to define the coverage afforded the insured." Reeder v. Nationwide Mut. Fire Ins. Co., 419 F. Supp. 2d 750, 756 n.7 (D. Md. 2006) (internal quotation marks omitted).

Further undermining 1426 Wisconsin's argument is that the documents that it claims to have received make explicit reference to the Special Form. See Southern Trust Ins. Co. v. Georgia Farm Bureau Mut. Ins. Co., 391 S.E.2d 793, 795 (Ga. Ct. App. 1990) (finding that where the policy declarations indicated both the policy number and that the declaration should be attached to and become part of the policy, the plaintiff had notice of the policy as a matter of law and his alleged non-receipt of the policy would not relieve him from its terms). The "separate listing" referenced in the declaration, see Ex. 8 to Pl.'s Opp'n at 3, corresponds to a document entitled "Listing of Forms, Endorsements and Schedule Numbers," which lists all of the documents that 1426 Wisconsin should have received in its policy. See id. at 6 (capitalized in original). One of the first items on this list is "Tbl of Cont-Businessowners Cov-Deluxe," corresponding to the Special Form's table of contents. See id. (capitalized in original). Directly below that entry is "Businessowners Property Cov-Spec Form," referring to the Special Form at issue here—a clear tip-off that the Special Form should have been included among the documents 1426 Wisconsin received. See id. (capitalized in original).[1] That the Special Form's table of contents was included

---

[1] It is worth noting that the Listing of Forms contains a legend at the bottom of the page, indicating that only those documents marked with an asterisk are new, or have been modified from previous policy periods. The fact that there is no asterisk next to the Special Form entry indicates that 1426 Wisconsin had received this form during previous policy periods, casting doubt on 1426 Wisconsin's argument that it had never been provided the documents containing the contractual limitations period. See, e.g., Jones v. Allstate Ins. Co., 1994 WL 677676, at *3 (6th Cir. Dec. 2, 1994) ("[T]he amounts of coverage, renewal notices, and premium notices . . . constituted notice to the [plaintiffs] that an insurance policy was in effect . . . ." (emphasis added)); Schunk v. New York Cent. Mut. Fire Ins. Co., 655 N.Y.S.2d 210, 212 (N.Y. App. Div. 1997) (holding that insurer did not waive a suit limitation clause in the policy by allegedly failing to provide a complete copy of policy when it was renewed). Nonetheless, as the Court must construe the facts in the light most favorable to the non-movant—here, 1426 Wisconsin—it will assume that 1426 Wisconsin had not been sent the Special Form during the previous policy periods either.

just a few pages further in, see id. at 10, while, according to 1426 Wisconsin, none of the thirty-nine pages enumerated in that table of contents were, was yet another cue that 1426 Wisconsin had not received the entirety of the policy.

The endorsements likewise contain numerous references to the Special Form.  The top of the Building Owners Endorsement document contains the statement: "This endorsement modifies insurance provided under the following: BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM."  Ex. 8 to Pl.'s Opp'n at 15.  And a more detailed description of the modification appears with this line: "THE BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM is changed as follows . . . ."  Id.  Nearly identical language appears on both the Protective Safeguards Endorsement for Sprinklered Locations and Restaurants, as well as on the Equipment Breakdown Exclusion endorsement. See id. at 13–17.  And a letter that Travelers sent to 1426 Wisconsin's public adjuster in March 2012 references the Special Form, stating, "[w]ithin the insurance policy contract . . . policy form **MP T1 02 02 05** [the Special Form] . . . includes the following exclusionary language . . . ."  Ex. 3 to Def.'s Mot. at 3.  Thus, the documents provided to 1426 Wisconsin indicate that the Special Form was missing.  See Young, 685 P.2d at 956; Willey, 990 P.2d at 216.

Although Chughtai read the documents he was provided at least a year before the contractual limitations period's expiration, he states that they did not provide him notice of the missing policy containing the contractual limitations period.  See Ex. 1 to Pl.'s Opp'n at 4. Chughtai's own subjective understanding of the policy is, however, irrelevant.  Rather, when assessing whether an insured has been provided reasonable notice of a missing policy, courts analyze the issue under an objective standard.  See Diamond Serv. Co. v. Utica Mut. Ins. Co., 476 A.2d 648, 653 (D.C. 1984) (assessing an insured's understanding of the facts surrounding an

insurance contract dispute based on what a reasonable person would be expected to understand in that situation).   And—objectively—the references to the Special Form indicate that 1426 Wisconsin was at least on notice to inquire about the missing documents.

All of this notwithstanding, 1426 Wisconsin attempts to explain away its failure to timely file its complaint.   For one, 1426 Wisconsin states that during the relevant period, it was not represented by an attorney.   See Pl.'s Mem. Opp'n at 8.   True enough.   But while courts have held claimants to a heightened standard in the insurance context when they are represented by counsel, the same is true when the party is a sophisticated businessperson.   See Bailey, 516 A.2d at 939 ("[C]ourts generally are reluctant to find the claimant has been misled by the insurance company where the claimant was sophisticated in business matters or had retained legal counsel.").   Chughtai—a property owner and the operator of a real estate leasing and investment business, Compl. at 2—falls within this category.   See Joseph M. Silverman, Inc. v. Harrison, 498 A.2d 193, 196 (D.C. 1985) (finding that an "experienced businessman and sophisticated property owner" had a duty to read the contract, and thus could not plausibly claim he was unaware of a certain contract clause).

Second, 1426 Wisconsin seeks to place the blame on others who may have offered incorrect advice.   For instance, Chughtai avers that "[he] was told that there was a three year statute of limitations in DC on contract claims so [he] did not really concern [him]self with this claim until 2014."   Ex. 1 to Pl.'s Opp'n at 6.   Chughtai is not absolved of the responsibility that all insureds have to read and know the contents of their insurance policies.   See Mills v. Cosmopolitan Ins. Agency, Inc., 424 A.2d 43, 48 (D.C. 1980).   And in light of the fact that he is a sophisticated party, Chughtai is held to an even higher standard than the typical insured with respect to reading and knowing the contents of the policy.   The fact that he relied—evidently to his detriment—on

nebulously described advice cannot be imputed to Travelers.  See Florsheim v. Travelers Indem. Co. of Ill., 393 N.E.2d 1223, 1231 (Ill. App. Ct. 1979) (holding that an insurance company is not bound by the conduct of an individual who is not acting as an agent of the insurance company).

Third, 1426 Wisconsin chalks up its untimeliness to Chughtai's busy schedule.  Explaining his failure to timely obtain information about the policy's limitations period, Chughtai states: "I travel frequently and had other investments that demanded my attention."  Ex. 1 to Pl.'s Mem. Opp'n at 6.  But an insured cannot estop the insurer from asserting a policy's limitations period when the insured failed to file a timely complaint due to its own inaction.  See P'ship Placements, 722 A.2d at 842.  Rather, "to be estopped from raising the contractual limitations period . . . the defendant must have made an affirmative inducement to [the] plaintiff[ ] to delay bringing action." Vigilant Ins. Co. v. Am. Mech. Servs. of Md., L.L.C., 816 F. Supp. 2d 114, 120 (D.D.C. 2011) (alteration in original) (emphasis added) (quoting Bailey, 516 A.2d at 937) (internal quotation marks omitted).

Yet, 1426 Wisconsin does not provide any evidence—beyond its assertions that the policy it received was incomplete—that Travelers affirmatively induced it into filing outside of the contractual limitations period.  1426 Wisconsin's only argument in this regard is that it "received an acknowledgment by [Travelers] that loss of rents was a covered loss," leading it to delay filing suit.  Pl.'s Mem. Opp'n at 8.  But an acknowledgment that a certain category of loss is covered by a policy does not constitute lulling.  See Fraser v. Fireman's Fund Ins. Co., 1988 WL 93111, at *2 (D.D.C. Aug. 30, 1988) (applying D.C. law and finding that the "mere acknowledgement or processing of a claim" has no bearing on the pertinent limitations period).  And given the absence of any evidence indicating that Travelers actively prevented 1426 Wisconsin from inquiring about the missing Special Form, or that it withheld the missing contents from 1426 Wisconsin, Travelers

did not lull 1426 Wisconsin into bringing an untimely action.  See Jones, 1994 WL 677676, at *3 (holding that insurer not estopped from relying on the contractual limitations period where insured "made no claim that [insurer] intentionally prevented their knowledge of the policy provision . . . , or that [insurer] engaged in other misconduct that might estop application of the contractual provision"; cf. Union Fire Ins. Co. of Paris, France v. Stone, 152 S.E. 146, 146 (Ga. Ct. App. 1930) (asserting that the insurance company would be estopped from relying on the policy's limitations period in light of its refusal to redeliver a copy of the policy to the insured, which kept the insured ignorant of the contractual limitations period); Fredericks v. Farmers Reliance Ins. Co. of N. J., 194 A.2d 497, 499 (N.J. Super. Ct. App. Div. 1963) (holding that estoppel could apply where insured requested a copy of the policy after purchasing it, and the insurance company explicitly told insured that it would receive a copy of the policy, but never sent the portion of the policy containing the contractual limitations period).  Even the facts as 1426 Wisconsin represents them, then, do not create a genuine issue of material fact regarding lulling.

## II.   Waiver

1426 Wisconsin's argument that Travelers waived the two-year contractual limitations period is similarly unavailing.  Under District of Columbia law, "[w]aiver is an act or course of conduct by the insurer which reasonably leads the insured to believe that the breach [of the policy's terms] will not be enforced."  Diamond, 476 A.2d at 654.  "[T]he general rule is that an insurance company is not deemed to have waived a contractual limitations period unless . . . . the company has conceded liability and some discussion of a settlement offer has occurred."  Martinez, 429 F. Supp. 2d at 59 (quoting Bailey, 516 A.2d at 938–39) (internal quotation marks omitted).

Travelers has not conceded liability.  Rather, it properly reserved its rights under the policy.  Generally, reservation-of-rights language should indicate specific coverage defenses.  Capitol

Specialty Ins. Corp. v. Sanford Wittels & Heisler, LLP, 793 F. Supp. 2d 399, 412 n.8 (D.D.C. 2011) (applying D.C. law).   However, in analogous cases—where the insurer has assumed the insured's defense against a claim asserted by a third party—courts have held that because identifying "coverage issues requires time, . . . a reservation of rights is sufficient as long as the insurer conducts an investigation and analysis with reasonable diligence and promptly notifies the insured once the process is complete."  Id. (internal quotation marks omitted).   Additionally, after sending a reservation-of-rights letter to the insured, the insurance company must disclaim coverage within several months in order to maintain that reservation.  See Diamond, 476 A.2d at 656–57 (holding that the six-month period between sending a reservation-of-rights letter and disclaiming coverage was acceptable).

Here, Travelers sent 1426 Wisconsin's independent adjuster a detailed reservation-of-rights letter on March 13, 2012.  See Ex. 3 to Def.'s Mot. at 3–5.  The letter stated that "Travelers is investigating this loss under a reservation of any and all rights it may have under the policy or at law . . . . Travelers has not made any formal coverage decision on your claim, and a final decision will not be made until all aspects of our investigation are completed."  Id. at 3.  In every subsequent letter to 1426 Wisconsin or its public adjuster, Travelers inserted similar reservation-of-rights language.  See id. at 6–12.  And, on September 13, 2012—six months later—it disclaimed coverage on 1426 Wisconsin's loss-of-rents claim.  See id. at 11–12.  As Travelers disclaimed coverage within six months of sending its reservation-of-rights letter, it did not waive any of its rights.  1426 Wisconsin attempts to recast this matter as an issue of material fact, arguing that "the reservation of rights was not a denial of liability but merely a prudent business decision during the course of the parties' investigation."  Pl.'s Mem. Opp'n at 7.  There is no disputing that an insurance

company's reservation of rights is a prudent business decision.  But that has no bearing on the fact that Travelers also did properly reserve its rights—there is no inconsistency.

Conveniently glossing over Travelers's reservation-of-rights language, 1426 Wisconsin argues that the letter from Travelers indicates that Travelers "had engaged in settlement discussions by requesting from Plaintiff its evidence of loss of rents."  Pl.'s Mem. Opp'n at 5.  But the initiation of settlement discussions and the investigation of a claim are not synonymous.  Indeed, D.C. courts have held that because an insurance company has a duty to defend the insured until it disclaims liability, the "insurer has a reasonable time to investigate the facts to determine its acceptance of liability."  Diamond, 476 A.2d at 656.  The investigatory stage is important, since "proper investigations can lead to early and efficient settlement of claims in the interest of the public as well as all parties to a given action."  Id.  To hold an insurance company liable simply because it conducts an investigation would greatly deter insurers from investigating future claims.  Travelers made plain in its letters to 1426 Wisconsin that it was still assessing 1426 Wisconsin's claim for building damages.  See, e.g., Ex. 3 to Def.'s Mot. at 10 ("Travelers will continue to adjust the claim and establish the cost of building repairs and business interruption damages stemming from the neighboring building collapse.").  At no point did it purport to enter into settlement discussions about 1426 Wisconsin's building damages or loss-of-rents claims.

1426 Wisconsin characterizes Travelers's transmission of payment to 1426 Wisconsin for building damages as a concession of liability.  See Pl.'s Mem. Opp'n at 4–5.  But this description is misguided for two reasons.  First, Travelers properly reserved its rights, as previously discussed.  And where an insurer has reserved its rights, subsequent payments that it issues to the insured will not constitute a waiver of those rights.  See, e.g., Bagher v. Auto-Owners Ins. Co., 2013 WL 3010694, at *3 (D. Colo. June 18, 2013) (The insurer, despite having made payments to the

insured, "did not clearly manifest an intention to waive the Policy's two year period of limitation. Rather, [the insurer's] written statements repeatedly indicate its intention to preserve its rights under the Policy."). Second, for the transmission of payment to constitute a concession of liability, the payment must have pertained to the claim at issue in the litigation. See Martinez, 429 F. Supp. 2d at 59 (finding that the defendant's payment to the plaintiff was not a waiver of the limitations period, as the payment was not for any of the claims being litigated). But the check that Travelers issued to 1426 Wisconsin did not cover the disputed loss-of-rents claim. Nowhere in the letter that Travelers sent 1426 Wisconsin approximately three weeks before sending the check did it state that it would pay 1426 Wisconsin for lost rent, see Ex. 3 to Def.'s Mot. at 8–10, and the check was explicitly marked "BUILDING DAMAGES PAYMENT," see Ex. 2 to Pl.'s Opp'n at 1.

And even as to 1426 Wisconsin's building damages claim, a reasonable insured would have understood that Travelers's payment in April was not an indication that further payment was forthcoming. Where checks issued to the insured "did not state that they were 'partial payments' or that they were for the purpose of settlement[, a] reasonable insured could not have read [similar] short notations to indicate a waiver by [the insurer] of the limitations period or an intention to pay the remainder of the claim." Enter. Eng'g, Inc. v. Hartford Fire Ins. Co., 2004 WL 2997857, at *4 (S.D.N.Y. Dec. 23, 2004); cf. Ilic v. Peerless Ins. Co., 670 N.Y.S.2d 1006, 1008 (N.Y. Sup. Ct. 1998) (denying the insurer's motion for summary judgment where one of the insurer's checks to the insured stated that it was a "partial payment," and another check stated that it was "SUBJECT TO FINAL REVIEW AND SETTLEMENT," as the evidence raised a question of fact as to whether the insurer had waived the policy's limitations period). Again, Travelers's check contained no indication that it was a partial payment for 1426 Wisconsin's loss-of-rents claim, nor did it indicate that it was for the purpose of settlement. Thus, "[t]he plaintiff had ample knowledge,

15

as the end of the two-year period approached, as to which claims the defendant was conceding its liability, and ample time to file a complaint before [the limitation period's expiration] as to those claims that the plaintiff believed were unresolved. Yet the plaintiff's own inaction kept [him] from filing a timely complaint." Martinez, 429 F. Supp. 2d at 61 (third alteration in original) (internal quotation marks omitted). See also Enter. Eng'g, 2004 WL 2997857, at *4.  And more generally, at no point did Travelers state that it was covering—or even anticipated covering—1426 Wisconsin's loss-of-rents claim.  Hence, Travelers's payment to 1426 Wisconsin did not waive the contractual limitations period.

## **CONCLUSION**

For the foregoing reasons, the Court will grant Travelers's motion for summary judgment. A separate Order will issue on this date.

_____/s/_____

JOHN D. BATES
United States District Judge

Dated:  June 26, 2015

16